[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10050
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20595-DPG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACK KACHKAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 21, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

A federal grand jury has indicted Jack Kachkar on nine counts of wire fraud affecting a financial institution based on his alleged scheme to defraud a bank using his company, Inyx.  After the indictment against him was filed, the government filed a motion requesting that he be detained pending trial because he was a flight risk.  The magistrate judge held a hearing on that motion, denied it, and ordered Kachkar's release, conditioned upon him satisfying a $1 million corporate surety bond and a $1 million personal surety bond with two cosigners.  The magistrate judge also ordered Kachkar to submit to home confinement and electronic monitoring, surrender his travel documents, and sign extradition agreements relating to extradition from Canada and Russia.  At the end of that hearing, the government did not object to the magistrate judge's order.

Twenty-seven days later, the government filed a motion requesting that the district court vacate the magistrate judge's order and detain Kachkar pending trial. The district court held a hearing on that motion.  It found that the evidence of Kachkar's guilt was strong; that virtually all of the over $100 million in fraudulent funds that Kachkar received were unaccounted for, with a "significant portion of those funds [having gone] to foreign bank accounts"; and that when Kachkar was arrested law enforcement found bank cards from Russian banks.  The court also noted that Kachkar was born in Syria and was a Canadian citizen.  It emphasized that, while Kachkar is a lawful permanent United States resident, he has

2

"significant ties and [has traveled] to foreign countries, including countries for which the United States does not have an extradition treaty." Considering those factors, along with the lengthy sentence Kachkar faces if he is convicted of the charged crimes, the district court found that he has a "strong incentive" to flee. It also concluded that no condition or combination of conditions of release could ensure his appearance at trial, and it ordered that Kachkar be detained pending trial. This is Kachkar's appeal of that order.

District court orders granting pretrial detention under the Bail Reform Act of 1984 "present mixed questions of law and fact subject to plenary review on appeal."[1] United States v. Quartermaine, 913 F.2d 910, 915 (11th Cir. 1990). "Purely factual findings, however, will not be disturbed unless they are clearly erroneous" such that the "reviewing court is left with the definite and firm conviction that a mistake has been committed." Id. (quotation marks omitted).

The Bail Reform Act governs the court's power to detain defendants pending trial. 18 U.S.C. § 3142(a), (e). The district court "shall order the pretrial release" of the defendant "unless the judicial officer determines that such release

---

[1] Kachkar contends that, by failing to timely object to the magistrate judge's order denying its first motion for pretrial detention, the government waived district court review of that order and the district court should have reviewed it only for plain error. In his response in opposition to the government's second motion for pretrial detention, however, Kachkar agreed that the district court's review "is de novo and requires the court to exercise independent consideration of all the facts." Any error the district court made in reviewing de novo the magistrate judge's order was invited by Kachkar, and "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." United States v. Ross, 131 F.3d 970, 988 (11th Cir. 1997) (quotation marks omitted).

will not reasonably assure the appearance" of the defendant.  Id. § 3142(b).  When a case involves a substantial risk that the defendant will flee, the government may move for a hearing, id. § 3142(f)(2)(A), where it must show by a preponderance of the evidence that no condition or set of conditions of release will reasonably assure his appearance at trial, United States v. King, 849 F.2d 485, 489 (11th Cir. 1988).

At the hearing, the court must take certain factors into account when determining whether "there are conditions of release that will reasonably assure the appearance of the person" at trial, such as:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking of children or by force, fraud, or coercion], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person; [and]
>
> (3) the history and characteristics of the person, including —
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . .

18 U.S.C. § 3142 (g).  "The rules concerning admissibility of evidence in criminal trials do not apply" to detention hearings, id. § 3142(f), and the parties may proceed solely by proffer, United States v. Gaviria, 828 F.2d 667, 669 (11th Cir. 1987).  If the court finds that the defendant is a flight risk and that no condition or

4

combination of conditions of release will reasonably assure the defendant's presence at trial, it must order that the defendant be detained pending trial. 18 U.S.C. § 3142(e)(1).

Kachkar contends that the district court erred in finding that the evidence of his guilt was strong. At the detention hearing the government proffered that two former Inyx employees will testify at trial that Kachkar instructed them to create fake invoices that he then submitted to a bank that had given Inyx a loan based on collateral in the form of accounts receivable. Based on those fraudulent invoices, the bank continued issuing loans to Inyx. Kachkar argued at the detention hearing that those two witnesses had recently sworn that Kachkar had never instructed them to engage in any fraud.

But the government's argument was not that the employees knew that the invoices they had prepared were being fraudulently used to receive more money from the lending bank. Instead it claimed that the employees will testify that Kachkar had told them to create the invoices, not that he told them that the invoices were fake or that he was planning to use them to convince the bank to lend Inyx more money. And the government at the detention hearing explained that it had evidence showing not only that Kachkar instructed Inyx employees to create those invoices, but also showing that Kachkar had (1) misled the bank into believing that other banks were willing to pay off the loan if it continued to lend

5

Inyx money, and (2) altered documents that he provided to the bank to make them appear as if he had the collateral to pay off the loans.  For that reason, the district court did not clearly err in finding that the evidence of Kachkar's guilt was strong.

Kachkar also contends that the district court erred by using as evidence of his guilt the fact that the proceeds of his alleged fraud were unaccounted for.  But the district court did not use the missing funds to support its finding that the evidence against Kachkar was strong.  It relied on the fact that the money was missing to support its conclusion that Kachkar had access to a wealth of financial resources, one of the factors it was required to consider under § 3142(g).

Finally, Kachkar contends that the district court failed to mention certain facts when it made its oral and written findings, including his personal and family ties to Florida, his poor physical health, the complexity of the case and his need to help his lawyers prepare a defense, and the fact that he had not fled despite knowing since 2012 about the criminal investigation and civil charges against him based on the fraud.

Kachkar's personal and family ties to Florida, however, were addressed during the detention hearing, and the district court found that while Kachkar had some ties to the United States, his travels to Russia and Libya, which do not have extradition treaties with the United States, and his possession of Russian bank cards and a Russian bank account showed that Kachkar also had "significant ties

6

and travel to foreign countries." It did not err in concluding that his "significant ties and travel to foreign countries" weighed in favor of a finding that he was a flight risk.

As for Kachkar's poor physical health, his health issues require that he receive diabetic medication and treatment for his hemochromatosis, which, if not properly treated, can result in higher than normal iron levels. Kachkar contends that the federal detention center cannot properly treat his health issues, as shown by his higher than normal glucose and iron levels. But Kachkar does not explain why those conditions showed that he was not a flight risk. And as for the complexity of Kachkar's case, the district court in its detainment order provided that Kachkar, while detained, "be afforded reasonable opportunity for private consultations with his counsel."

The district court also did not ignore the fact that Kachkar did not flee after he learned in that he was being investigated for the wire fraud crimes and that civil claims had been asserted against him based on his alleged fraud. During the detention hearing Kachkar argued that the fact that he had not yet fled the United States weighed against pretrial detention, and the district court asked questions in an attempt to clarify some details of his argument. The district court did not ignore Kachkar's argument on this issue, it simply disagreed that his failure to flee while under investigation meant that he would not flee after having been indicted.

7

The district court's factual findings as to the nature and circumstances of the offenses charged, the weight of the evidence against Kachkar, and Kachkar's history and characteristics were not clearly erroneous.  And the district court did not err in finding by a preponderance of the evidence that pretrial detainment was warranted because Kachkar presented a serious risk of flight and no condition or combination of conditions of release would reasonably assure his appearance at trial.[2]

**AFFIRMED.**

---

[2]  Kachkar also contends that the district court erroneously applied a district-wide standard for imposing pretrial detention instead of deciding whether detainment was warranted based on the facts of his case.  While the district court at the detention hearing commented that it "was a little surprised that a bond was issued [by the magistrate judge because] there are many cases in this district with a lot less and those people have been detained," it is clear from the transcript of that hearing and from the district court's detention order that the court based its findings on the facts surrounding Kachkar's case.